DR. LINDA EDELIN
1223 Wilshire Blvd.
Santa Monica, CA 90403
(310) 874-2430
DLE@idnas.org
Plaintiff In Pro Per

FILED

CLERK, U.S. DISTRICT COURT

09/26/2025

CENTRAL DISTRICT OF CALIFORNIA
BY_____GSA_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DR. LINDA EDELIN,

          Plaintiff,

    vs.

STATE OF MAINE

        Defendant

)
)
)
)
)
)
)
)
)

Case No.: 2:25-CV-08869

NOTICE OF FILING EXHIBITS

I, Dr. Linda Edelin, pro se Plaintiff, respectfully give notice of filing the following exhibits, attached hereto. These exhibits are submitted in support of Petitioner's pending Petition for Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b). Each exhibit demonstrates the constitutional violations, procedural irregularities, and resulting irreparable harm that necessitate immediate relief.

# 1. ATTACHED EXHIBTS

1.  Exhibit A: Initial outreach by Emily Allen, reporter, Portland Press Herald, informing Plaintiff she is writing a story about my criminal case in Maine (September 24, 2025)

2.  Exhibit B: Plaintiff response to Ms. Allen, asking for clarity of scope of article (September 24, 2025)

3.  Exhibit C: Response to Plaintiff from Ms. Allen, asking for "response to allegations" (September 24, 2025)

4.  Exhibit D: Plaintiff response to Ms. Allen with written statement outlining 1. Grant /Business Plan pivot due to pandemic 2. Constitutional violations by State of Maine 3. Federal Court filing (September 25, 2025)

5.  Exhibit E: Plaintiff response re: 1. Misidentification as constitutional violation 2. Harm of misidentification as it has now spread to media (September 25, 2025)

6.  Exhibit F: Ms. Allen email stating she has access to privileged attorney-client correspondence (September 25, 2025)

7.  Exhibit G: Plaintiff response to Ms. Allen that Ms. Allen is not reporting she is advocating instead of asking me about my motions before Maine and Federal courts (September 25, 2025)

8.  Exhibit H:  Plaintiff response to Ms. Allen noting that attorney-client privileged and contested correspondence cannot be used in reporting (September 26, 2025)

9.  Exhibit I: Plaintiff escalates matter to supervisors of Ms. Allen via email listing errors in reporting and listing legal exposure of paper should these errors go to print (September 26, 2025)

# 2. LEGAL POSTURE

The attached correspondence demonstrates:

(a) The State's leakage of privileged and contested materials to the press, including communications with former counsel Attorney Fred Lipp, which remain protected by

2

attorney–client privilege (*Swidler & Berlin v. United States*, 524 U.S. 399 (1998); Restatement (Third) of the Law Governing Lawyers § 129).

(b) The press channeling prosecutorial materials while refusing to acknowledge Plaintiff's state constitutional motions or federal filing, thereby attempting to shift adjudication into the press while proceedings are federally stayed.

(c) The continuation of constitutional misidentification, charging "Ellison" as a surname rather than Plaintiff's legal surname, Edelin, perpetuating the violation of the Sixth Amendment already before this Court.

3. PURPOSE OF FILING

These exhibits are filed to complete the record before this Court, demonstrating how prosecutorial misconduct, misidentification, and privilege violations are being propagated through coordinated press activity. The pattern underscores the irreparable harm presently being inflicted and further supports Plaintiff's request for immediate injunctive relief.

Dated: September 26, 2025.

/s/ Dr. Linda Edelin

_____

DR. LINDA EDELIN

Plaintiff, pro se



Wed, Sep 24, 11:48 AM

(2 days ago)

**Emily Allen**
**<eallen@pressherald.com>**

to me

Hi Linda,

My name is Emily Allen and I'm a reporter for the Portland Press Herald in Maine.

I'm writing about your criminal case in Cumberland County involving the Maine Technology Institute. Do you have any time this week to talk?

I can be reached any time over email or at (207)791-6457. Thanks,



Emily Allen

Reporter, Portland Press Herald

(207)791-6457

eallen@pressherald.com



Sep 24, 2025, 2:58 PM
(2 days ago)

**Dr. Linda Ellison <dle@idnas.org>**

to Emily

Ms. Allen,

Thank you for your outreach.

Before I determine how best to participate, could you clarify the scope of your story and the aspects you intend to focus on?

Sincerely,

Dr. Linda Edelin



Wed, Sep 24, 3:17 PM

(2 days ago)

**Emily Allen**

to me

Hi Dr. Edelin -

I want to talk about it all!

I've seen the file in Cumberland, including the indictment, and I'm hoping to get your response to the allegations.

I also want to know more about the project you were working on before the MTI grant and what your experience has been with the court process.

Let me know if you would have any time this week to talk (or any further questions.)



Thu, Sep 25, 8:12 AM

(1 day ago)

**Dr. Linda Ellison <dle@idnas.org>**

to Emily

Ms. Allen,

Thank you for clarifying your scope. I am not available for a live call this week, but I can provide
a written statement for context.

**Statement**

In January 2020, I applied for a grant from the Maine Technology Institute on behalf of my
then-nascent enterprise—a scientifically-grounded supplement company. In early March 2020,
MTI awarded me $22,000 — an exceptionally small sum by the standards of scientific research,
but one I accepted in good faith, with every intention of following the particulars of my business
plan, which called to launch a bison beauty collagen supplement as the company's first official
product offering during New York Fashion Week in September 2020. At that time, the MTI award
was earmarked to fund research and development of the bison beauty collagen supplement,
part of my investigation into beauty as a biomarker of health, exploring whether strengthening
physical coherence might fortify wellness itself.

Then the world fractured. On March 11, 2020, the World Health Organization declared
COVID-19 a global pandemic. By the end of March, forty thousand souls had been claimed.
Nations shuttered. Citizens sheltered. In that crucible of crisis, pursuing a beauty supplement
felt not merely frivolous, but unconscionable.

I pivoted my business plan, changing the order of release of the products in my pipeline, and
also the intended market of one of the products. I possessed a product—an immunity-building
supplement, already developed, tested, and formulation-locked. Originally destined for ICU use

through an exclusive multi-million-dollar hospital contract, this formula would have served only a privileged few. Instead, I tore up that contract. As the pandemic engulfed the globe, I chose to launch the immunity supplement to the public, sacrificing millions in exclusive revenue for the greater good. This was not business strategy—it was civic duty.

Working with desperate urgency, I organized manufacturing, created packaging, built a website, and launched April 1, 2020—six months ahead of schedule. The immunity supplement went from formulation on paper to product with global distribution in under a month. I saw this pivot as my obligation as a global citizen.

MTI disagreed. They branded my response to a global emergency as breach of contract and demanded immediate, full repayment in one lump sum, which I could not provide. When I explained the pivot's necessity, offered structured repayment plans, and proposed settlement options, every gesture was rebuffed.

To resolve what should have been a straightforward civil contract dispute, I retained counsel. I paid a retainer, established a budget ceiling, and instructed him to negotiate repayment terms. He not only failed—he inflamed the situation. His hostile approach antagonized MTI further. A few months into the endeavor, he informed me that he had exceeded not just the retainer, but four times the budget ceiling I had set, demanding additional funds I refused to provide.

At that juncture, he ceased to be my attorney in any legal sense. Under Maine Rules of Professional Conduct 1.5 and 1.16, a lawyer's authority is tethered to a valid, current retainer. When that retainer is exhausted and no additional fees are paid, the lawyer must withdraw. Instead, this attorney continued acting as my purported representative despite lacking any legal standing to do so—conduct that ultimately precipitated criminal exposure.

MTI's response to my inability to provide immediate, lump-sum repayment was extraordinary. What should have remained a civil contract dispute transformed into criminal prosecution—a metamorphosis possible only because MTI, despite marketing itself as a private entity, operates on government funding and can thus invoke the machinery of criminal law.

The legal process that followed violated fundamental constitutional principles. The indictment bore not my legal name but that of a fictitious person. Service was attempted through an attorney who accepted it before any retainer existed—unlawful from inception. Five successive lawyers purporting to represent me violated state and federal laws: abandoning defensive

posture, fee-gaming, colluding with prosecution, filing joint motions with prosecution without my knowledge, and agreeing to proceedings and dates without my consent.

Left with no recourse, I invoked my constitutional right to self-representation under *Faretta v. California*. Federal law mandates a standalone *Faretta* hearing to ensure this waiver is knowing, voluntary, and intelligent. Maine refused to conduct it. Under threat of warrant, the court attempted to bulldoze forward into proceedings that were constitutionally impermissible without proper *Faretta* in place. When I appeared remotely, reserved my rights, and made a special appearance to prevent waiver, the court branded me disruptive for merely asserting constitutional protections.

The compounded violations transcend local procedure—they are constitutional. I have filed suit in federal court against the State of Maine for systematic denial of due process: unlawful service, misidentification under legal fiction, denial of counsel, wholesale dismissal of constitutional motions, refusal to grant the mandated standalone *Faretta* hearing, and pressing forward illegally in defiance of federal supremacy.

This is now a matter for the federal court to decide. Maine can either halt proceedings until the Constitution is honored, or it can press forward unlawfully and compound its violations. There is no third option.

My case joins others exposing Maine's pattern of treating the Constitution not as binding law but as optional guidance. This ceased being about $22,000 long ago. It is now about whether those who govern remain bound by the nation's foundational charter—or whether they may discard it whenever it proves inconvenient.

**Quotable for Press Use**

"This case stopped being about $22,000 long ago. It is now about the Constitution."

"If a state can criminalize a scientist for pivoting to protect public health, then no American's rights are secure."

"This is no longer Maine versus me. It is Maine versus the Constitution."

"My federal suit against the State of Maine vindicates the supremacy of our founding charter and the ideals our Framers inscribed in its bedrock."

"My case joins others exposing Maine's pattern of treating the Constitution not as binding law but as optional guidance. It is now about whether those who govern remain bound by the nation's foundational charter—or whether they may discard it whenever it proves inconvenient."

Sincerely,

Dr. Linda Edelin



**Dr. Linda Ellison <dle@idnas.org>**

Thu, Sep 25, 9:53 AM

(1 day ago)

to Emily

Ms. Allen,

For accuracy, I want to underscore that my legal name is **Dr. Linda Edelin**. That is the name on my driver's license, passport, bank account, and all official records.

I understand that the indictment you have reviewed misidentifies me as "Ellison." That misnaming is not a minor clerical error — it is a constitutional violation at the center of my federal case. I do not want to see that error repeated in print.

I have already noted your outreach in my federal filing, as it shows how the State's misidentification can spread into the hands of the media. Your reporting will also become part of the court record, and once published, I will include the piece itself as an exhibit in my federal filings.

Accuracy here is not a matter of preference. It is a matter of law, and I trust your reporting will reflect that correctly.

Sincerely,

Dr. Linda Edelin



Thu, Sep 25, 1:39 PM

(1 day ago)

**Emily Allen**

to me

Thank you for this response!

Regarding the naming issue: I see the name "Dr. Linda Ellison" was used in some of the documents from MTI that were listed as exhibits in your file (including the R&D report and the letter to Frederick Lipp, sent in 2020.) **[Plaintiff's note: I retained Attorney Lipp and, Attorney-client privilege precludes reporters from having or even being aware of this correspondence. As Attorney Lipp has refused to talk even to my subsequent counsel on the grounds of privilege, so the reporter did not get this correspondence from him. ]**

The Ivy & Grace LLC was registered to you as "Linda Ellison Edelin."

1. Can you explain the discrepancy? To me, it seemed like they were using the name "Linda Ellison" because that was the name MTI had in documents from the grant, but I want to make sure I'm not missing something.

2. Is the problem that court records are using the name "Ellison" at all, or are you worried only because they're omitting the name "Edelin?"



Thu, Sep 25, 1:44 PM
(1 day ago)

**Emily Allen**

to me

And can you say anything about how them using the name "Linda Ellison" harms you, if that's what you're arguing? I can't help but notice you've used the Ellison name a lot on social media and the Kaü website.



Thu, Sep 25, 6:40 PM

(20 hours ago)

**Dr. Linda Ellison <dle@idnas.org>**

to cfox, news, Emily

Ms. Allen,

You are not asking me about my filings, my constitutional arguments and motions, or my federal case. Instead, your questions track only the materials the Attorney General, it seems, has provided. In Maine's analog court system, much discovery and the State's working file remains at the AG's office rather than in a public courthouse. Reporting from one side's box while omitting the other is not journalism — it is advocacy.

Your current focus on minutiae — parsing emails and procedural particulars supplied by the State — mirrors the prosecution's narrow playbook and risks obscuring the larger whistleblower and constitutional story at hand. By uncritically adopting the State's narrow framing and parroting its particulars, you risk turning reporting into prosecution — effectively prosecuting me in print — which is not responsible journalism and, if it repeats demonstrably false assertions after being put on notice, may expose the outlet to legal risk.

You have not asked me about a single one of my constitutional motions to the State or about my federal filings. That omission signals a tilt toward the State's account. Reporting that draws primarily or exclusively from one side's materials, while ignoring the other side's filings, advances a narrative. Once you are on notice of a factual error in the State's record, repeating that error in print is reckless; it moves the publication from a neutral outlet to part of the evidentiary record that reproduces a constitutional violation.

The larger story here is constitutional. The State of Maine is presently the subject of multiple federal challenges alleging disregard for constitutional protections in areas ranging from voting rights to education. I do not take a position on the merits of those other disputes. The point is

narrower: my case is not an isolated incident. Maine's repeated posture of treating constitutional
guarantees as optional reflects a broader pattern. My own experience — the denial of a
standalone Faretta hearing, the wholesale dismissal of constitutional motions without review,
and the threat of warrant for exercising my rights — is consistent with that trend. Federal
intervention is necessary to vindicate the supremacy of the Constitution and prevent irreparable
harm. This is a much larger story that impacts many people and deserves recognition in print.

To your question about my name: naming is not cosmetic in legal proceedings. Legal names
must be used. My one legal surname is **Edelin.** "Ellison" is my middle name, which I have at
times used professionally in public and branding contexts — much as Ralph Lauren (born Ralph
Lifshitz) adopted a commercially resonant name for his business. That is a legitimate branding
practice. Prosecution is not a branding exercise. When the State charges "Linda Ellison," it
charges a fictitious person — a constitutional violation. When journalists reproduce that
misnaming, they carry forward the same constitutional violation — placing a false legal identity
into the public record and causing harm that cannot be undone by later correction.

Those harms are not limited to me personally. My company employs and contracts with dozens
of people and serves customers worldwide. Conflating my personal legal dispute with the
company — or printing the State's misidentification as if it were a legal fact — risks tangible
commercial harm: lost customers, chilled business, and economic consequences for people
who have nothing to do with these proceedings. There is a legal distinction between
commentary about an individual and actions that amount to interference with commerce.
Publishing materially misleading and/or slanted coverage that drags my business into this case
raises a different and serious level of legal risk.

It is also notable that your inquiry arrives now, after years of litigation, at a moment when public
pressure could function as leverage in pending proceedings. The timing raises legitimate
questions about editorial independence. A balanced story would engage both the State's filings
and my state and federal records — not present a single side primarily as if it were the whole
story.

Again, for accuracy and to avoid compounding constitutional error: my legal name is **Dr. Linda
Edelin.** Any use of "Ellison" in the role of a legal surname is incorrect. I have already placed
your outreach on the federal record to demonstrate how the State's misidentification can
propagate into public reporting; if an article prints that misidentification after being put on notice,
I will include the published piece as an exhibit in my filings and will pursue all available legal

remedies to vindicate my rights and to protect the interests of the company and its employees and customers.

Accuracy here is not preference; it is law. I trust your reporting will reflect that.

Sincerely,
Dr. Linda Edelin

# Formal Notice: Federal Record, Privilege, Non-Public Materials, and Legal Exposure



1:48 PM (1 hour ago)

**Dr. Linda Ellison <dle@idnas.org>**

to cfox, news, Emily

Ms. Fox and Ms. Arenstam:

This letter serves as formal notice of complaint and harm. The *Press Herald* is already implicated in federal proceedings. The line of questioning pursued by your reporter, Emily Allen, evidences reliance on prosecution-only materials, intrusion into privileged, contested, and unadjudicated communications, and exclusion of my filings and federal claims. That conduct is documented in the federal docket as exhibits, and your newsroom is therefore a fact witness in active federal litigation and subject to compulsory process.

1. **Federal Record.** Each email, each question, and each omission from your reporter is filed, and will continue to be filed if more evidence is received, as part of the federal record. The *Press Herald* is identified in the federal docket as part of the evidentiary chain, and its role in prosecutorial alignment is under review.
2. **Attorney–Client Privilege.** Your reporter's questions referenced communications involving Attorney Fred Lipp. Attorney Lipp's communications with me are covered by attorney–client privilege, which attaches when legal advice is sought and survives termination of representation (*Swidler & Berlin v. United States*, 524 U.S. 399, 403–05 (1998)). Privilege is not waived by involuntary or unauthorized disclosure; waiver requires the client or an authorized agent (Restatement (Third) of the Law Governing Lawyers § 129). Reliance on Attorney Lipp's privileged communications is a direct intrusion into protected legal material without my consent, which you don't have.

3. **Non-Public and Contested Materials.** Your reporter has relied on material tied to Attorney Lipp that is privileged, *contested,* and non-public. Further, the First Amendment does not extend protection to publication of information obtained unlawfully or through backchannels (*Bartnicki v. Vopper*, 532 U.S. 514, 528 (2001)). Use of Attorney Lipp's communications, which remain *contested and unadjudicated*, places your outlet squarely in violation of those limits.

4. **Prosecutorial Alignment.** To date, your reporter has asked exclusively about the prosecution's indictment and file. She has not asked a single question about my constitutional motions filed in the state case, nor about the federal action I filed which has halted state proceedings. *The line of questioning mirrors the State's position while excluding my filings entirely.* That is clear *advocacy for the prosecution, not journalism,* and it is documented in the federal record as such.

5. **Reporter's Privilege.** The reporter's privilege is qualified, not absolute. It does not extend to participation in prosecutorial strategy or intrusion into sealed, contested, andor privileged matters (*Branzburg v. Hayes*, 408 U.S. 665, 690–91 (1972)). Your reporter's conduct is not protected newsgathering; it is a prosecutorial agency.

6. **Misidentification.** My legal surname is Edelin. Charging "Ellison" constitutes charging a fictitious person, a constitutional violation under the Sixth Amendment. Reproducing that misidentification in print after notice continues theconstitutional violation and expands your liability.

7. **Pattern and Timing.** The *Press Herald's* pattern of conviction-only coverage, combined with outreach at a moment when state proceedings are frozen by federal jurisdiction, evidence likely coordination with the prosecution to exert pressure outside the courtroom.

8. **Legal Exposure.** The record already created establishes liability. Your newsroom is exposed to:
   - **Defamation** — where contested allegations or misidentification are repeated as fact.
   - **Tortious interference with judicial process** — by advancing the prosecution's litigation position during pending proceedings.
   - **Tortious interference with business relations** — by creating reputational and commercial harm to my company and its affiliates.
   - **Contempt and sanctions** — for use of privileged or non-public material in defiance of judicial protections (*Seattle Times*, 467 U.S. at 33–34).
   - **Compulsory testimony** — under *Branzburg*, 408 U.S. at 690–91, reporters are not immune from testifying when their conduct intrudes on privilege or evidence coordination with prosecution.

You are not outside this case. Your reporter's actions have placed you inside it, on the record, and accountable under federal law.

**Cease and desist from further reliance on or dissemination of privileged, sealed, or contested materials not adjudicated by the court. The consequences are already fixed:**

**your newsroom is a fact witness in the federal docket, subject to compulsory testimony, and exposed to civil liability and sanctions. Any further act enlarges that record and intensifies that exposure.**

Sincerely,

Dr. Linda Edelin



12:20 PM (2 hours ago)

**Dr. Linda Ellison <dle@idnas.org>**

to Emily, cfox, news

Ms Allen,

In reviewing our prior correspondence, I see you referred to a communication involving Attorney Fred Lipp.

To be clear: **attorney–client privilege attaches the moment one engages a lawyer for legal advice, and it continues after representation ends. Courts are consistent that former-client privilege survives.**

The State is currently arguing in court that Mr. Lipp can testify against me, accusing me of passing materials through him to the grant organization. I am asserting that his retainer ended several months earlier and thus, that he legally did not represent me, speak for me, or act on my behalf at the time in question. My bank statement of payments documents this. This dispute is an open matter before the court. What is not open is that attorney-client privilege continues to exist until a court rules that it does not.

**Because this issue has not been decided in court — and because I have not been convicted of any wrongdoing — any use of contested, privileged material is improper. If you are in possession of such material, it was obtained through the State's disclosure of privileged communications and cannot be treated as usable in your reporting.**

Please consider this email notice that I will be filing your email federally, adding to my filing regarding you, as further **evidence of prosecutorial misconduct and privilege violations.**

Sincerely,

Dr. Linda Edelin